**REMAND/JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2133-GW(PLAx) | | Date | May 23, 2016 |
|---|---|---|---|---|
| Title | *Tim Jones v. CLP Resources, Inc. et al.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| D. Alan Harris | David R. Ongaro |
| Priya Mohan | Maureen Bogue |

**PROCEEDINGS:**     **PLAINTIFF'S MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447(c) [30]**

The Court's Tentative Ruling is circulated and attached hereto.  Based on the stipulation [44] filed by the parties on May 22, 2016, and for reasons stated on the record, Plaintiff's Motion to Remand is GRANTED; the above-entitled action is remanded to the Los Angeles County Superior Court (Antelope Valley - MC025546).

|  | : | 02 |
|---|---|---|
| Initials of Preparer | JG | |

**_Jones v. CLP Res., Inc., et al._**, Case No. CV 16-2133-GW (PLA)
Tentative Rulings on: (1) Plaintiff's Motion to Remand, and (2) Defendant CLP Resources, Inc.'s Motion to Strike

## I.  Background

Tim Jones ("Plaintiff") sues CLP Resources, Inc. ("CLP"); TrueBlue, Inc. ("TrueBlue"); and First Solar, Inc. ("First Solar") (collectively, "Defendants") for 16 causes of action related to his employment by Defendants from June 2011 until October 2014.  *See generally* Compl., Docket No. 1-2.  Plaintiff asserts the first 11 causes of action solely against CLP, including: (1) failure to pay overtime wages under California Labor Code §§ 1194, 1194.2, 1198, and Industrial Welfare Commission ("IWC") Wage Order No. 16; (2) failure to provide accurate information on wage statements under California Labor Code § 226; (3) failure to maintain accurate payroll time records under California Labor Code § 1174 and IWC Wage Order No. 16; (4) failure to provide proper rest periods under California Labor Code § 226.7 and IWC Wage Order No. 16; (5) failure to provide proper meal periods under California Labor Code §§ 226.7, 512, and IWC Wage Order 16; (6) failure to provide wages under California Labor Code § 293; (7) failure to provide indemnification and reimbursement of expenditures under California Labor Code § 2802; (8) breach of contract; (9) failure to provide employment records upon request under California Labor Code § 226; (10) civil penalties under the Private Attorney General Act ("PAGA") for violations of California Labor Code § 2698 *et seq.*; and (11) failure to provide personnel records upon request under California Labor Code § 1198.5.  *Id.* ¶¶ 47-91.  Plaintiff asserts the remaining five causes of action against all Defendants, including: (12) false representations in violation of California Labor Code §§ 970 and 972; (13) fraud and/or negligent misrepresentation; (14) retaliation and wrongful termination on account of Plaintiff's formal complaints against Defendants in violation of California Labor Code § 1102.5; (15) retaliation and wrongful termination on account of Plaintiff's disability in violation of California Government Code § 12940; and (16) retaliation and wrongful termination in violation of fundamental public policy.  *Id.* ¶¶ 92-128.

CLP is a trade-staffing company that provides skilled employees to a broad range of customers in the commercial, industrial, energy, government, and residential sectors.  *Id.* ¶ 4. CLP is a subsidiary of TrueBlue, a publicly traded company that provides blue-collar staffing to

similar industries as CLP.  *Id.*  First Solar is a solar energy company that designs, builds, and operates utility-scale solar power plants.  *Id.* ¶ 5.

From June 2011 until October 20, 2014, Defendants employed Plaintiff in temporary positions with First Solar related to the construction of solar power plants in Nevada and California.  *Id.* ¶¶ 9, 10.  From June 2011 until September 2011, Plaintiff worked at a solar plant site in Primm, Nevada.  *Id.* ¶ 10.  From October 2011 until July 2014, Plaintiff worked at a similar site in Lancaster, California (the "Lancaster site").  During Plaintiff's employment at the Lancaster site, he was promoted from crew manager to field supervisor.  *Id.* ¶ 10.  Plaintiff alleges that during his employment at the Lancaster site, Defendants failed to pay him for overtime that he frequently performed, in violation of California's labor laws.[1]  *Id.* ¶ 21.  In addition, Plaintiff alleges that Defendants required Plaintiff to work through his rest period and meal breaks without pay, provided him with inaccurate wage statements, and failed to maintain accurate payroll records.  *Id.* ¶¶ 22-46.

When construction work at the Lancaster site was completed in July 2014, Plaintiff alleges that Defendants' representative, Fred Pech ("Pech"), informed Plaintiff that Defendants wished to continue employing him and offered to send him to New Mexico for training as a civil superintendent.  *Id.* ¶ 11.  Pech informed Plaintiff that the program would last approximately four to six months, after which he would be staffed as a civil superintendent at a site in Nevada.  *Id.* Pech assured Plaintiff that he would receive a salary during the program, per diem, full benefits, and reimbursement for trips home.  *Id.*  In anticipation of relocating, Plaintiff incurred numerous expenses, including terminating his apartment lease.  *Id.* ¶ 12.  After Plaintiff incurred these expenses, he was informed by Pech that the program had been canceled.  *Id.*

Plaintiff alleges that Pech thereafter offered Plaintiff a position to train as a civil superintendent at two Nevada sites.  *Id.* ¶ 13.  Pech asked Plaintiff to start work in Nevada the following week and assured Plaintiff that he would be entitled to per diem as well as reimbursement for expenses incurred in relocating to Nevada.  *Id.* ¶ 14.  Plaintiff alleges that Pech also represented that Plaintiff's annual pay would amount to approximately $80,000 to $100,000.  *Id.* ¶ 15.  As a result of Pech's representations, Plaintiff moved to Nevada in July

---

[1] Plaintiff alleges that the statute of limitations on his claims related to the Lancaster site have been tolled by the pendency of *Headley v. CLP Res., Inc., et al.*, 12-cv-11037-GW (PLAx) and *Christensen v. CLP Res., Inc., et al.*, No. 2:14-cv-08073-GW (PLAx), pursuant to *Crown, Cork & Seal v. Parker*, 462 U.S. 345, 354 (1983) and *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).  *See* Compl. ¶ 6, Docket No. 1-2

2

2014; however, Defendants delayed Plaintiff's start date, and he did not begin work in Nevada until September 2, 2014. *Id.* ¶ 15. When he did begin work, Plaintiff alleges that he was paid at a significantly lower rate than he had been promised, and that he never received reimbursement for his expenses or per diem to which he was entitled. *Id.* ¶¶ 14, 15. Moreover, although Plaintiff had been told he would be working as a civil superintendent, he was instead ordered to work in the field as a site supervisor. *Id.* ¶ 16.

On or around September 15, 2014, Plaintiff was severely injured while working on site in Nevada. *Id.* ¶ 17. As a result of his injuries, Plaintiff's physicians notified Defendants that Plaintiff's employment was temporarily restricted and he could not lift heavy objects or drive a company vehicle. *Id.* ¶ 18. Plaintiff alleges that although he could still perform desk work, Defendants isolated him from other employees and did not provide him with any appropriate work. *Id.* In addition, shortly after his injury, Plaintiff submitted a declaration in connection with a pending lawsuit against Defendants related to Defendants' alleged violations of California labor laws at the Lancaster solar site. *Id.* ¶ 19. As a result of his declaration, Plaintiff alleges that Defendants isolated him and subjected him to hostile treatment. *Id.* Plaintiff made two formal complaints through CLP's employee hotline regarding Defendants' actions, but never received a response. *Id.* ¶ 20. On October 21, 2014, Defendants terminated Plaintiff's employment. *Id.* ¶¶ 19-20.

Plaintiff seeks (1) unpaid overtime wages; (2) meal break and rest period compensation; (3) continuing wages; (4) lost income and benefits; (5) reimbursement of expenses, including per diem and relocation expenses; (6) civil penalties; (7) statutory penalties; (8) compensatory damages; (9) liquidated damages; (10) punitive damages; (11) attorney's fees and costs; (12) interest. *Id.* at 38:11-40:13.

## II. **Motion to Remand**

Plaintiff originally filed this action in Los Angeles Superior Court on June 17, 2015. *See generally* Compl., Docket No. 1-2. The parties have engaged in discovery, including written interrogatories and Plaintiff's deposition, which took place on January 20, 2016. *See* Pl.'s Mot. to Remand ("Mot.") at 3:3-13, Docket No. 30. On December 14, 2015, First Solar filed a motion to compel Plaintiff's answers to interrogatories it served on August 31, 2015, including interrogatories targeted at information related to Plaintiff's damages in the action. *See* Notice of Removal pt. III, ¶ 7, Docket No. 1. The state court granted First Solar's motion on March 4,

2016.[2]  *See* Decl. of Alan Harris ("Harris Decl.") Ex. 1 at 2, Docket No. 30-1 at 11.

On January 15, 2016, CLP and TrueBlue filed a motion to compel interrogatory responses and a motion for judgment on the pleadings as to Plaintiff's sixth, tenth, fourteenth, fifteenth, and sixteenth causes of action.  *Id.*  On March 1, 2016, Plaintiff served supplemental interrogatory responses to CLP's interrogatories, which included a computation of damages in the amount of $1,648,310.66.[3]  *See* Decl. of Maureen Bogue ("Bogue Decl.") ¶ 6, Ex. A, Docket No. 6 at 42-46.  On March 29, 2016, Defendants removed the case to this Court, asserting diversity of citizenship.[4]  *See generally* Notice of Removal, Docket No. 1.  Now pending before the Court is Plaintiff's Motion for Remand.  *See generally* Mot., Docket No. 30.  Defendants have filed an Opposition, *see generally* Opp'n to Mot. ("Opp'n"), Docket No. 35, to which Plaintiff has replied.  *See generally* Reply to Opp'n ("Reply"), Docket No. 38.

### A.  *Legal Standard*

"Federal courts are courts of limited jurisdiction," and have subject matter jurisdiction only to the extent "authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137 (1992); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).  The removal statute is strictly construed against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985); *Libhart v. Santa*

---

[2] To the extent the dates summarized in the parties' pleadings vary from the dates entered on the state court docket, the Court uses the dates on the state court docket.  *See* Harris Decl. Ex. 1 at 1-5, Docket No. 30-1 at 9-14 (state court docket).

[3] On March 3, 2016, CLP and TrueBlue withdrew their motion to compel, after receipt of Plaintiff's supplemental interrogatory responses.  *Id.*  On March 17, 2016, the state court granted CLP and TrueBlue's motion for judgment on the pleadings with respect to Plaintiff's tenth and fifteenth causes of action.  *Id.*

[4] On February 26, 2016 , Plaintiff filed a motion for summary adjudication as to the second, fifth, and seventh causes of action, which was scheduled to be heard on May 12, 2016.  *See* Notice of Removal ¶ 12, Docket No. 1.  A post-mediation status conference was scheduled for June 8, 2016, a final status conference was set for July 18, 2016, and trial was scheduled for July 29, 2016.  *Id.*

*Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

To invoke diversity jurisdiction, the party asserting jurisdiction must establish that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (citations omitted).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957)).  A person's domicile is the place he or she physically resides with intent to make it a fixed and permanent home, while residence means living in a particular locality.  *See id.* (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)).

For diversity purposes, a corporation is a "citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The phrase "principal place of business" means the place where a corporation's board and high level officers direct, control and coordinate its activities, also referred to as its "nerve center."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). "In practice it should normally be the place where the corporation maintains its headquarters − provided that the headquarters is the actual center of direct, control, and coordination."  *Id.* at 93.

The removal statute also imposes procedural requirements, the failure to comply with which can result in remand.  *See* 28 U.S.C. § 1447(c); *Gray v. Moore Bus. Forms, Inc.*, 711 F.Supp. 543, 544 (N.D. Cal. 1989) ("A diversity action will be remanded to state court for two reasons: (1) lack of subject matter jurisdiction; and (2) procedural defects in the removal process.").  These requirements provide that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b)(1); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998) ("[A] proper removal notice must be filed within 30 days of service of the plaintiff's complaint.").  "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C.

§ 1446(b)(3).  However, diversity cases in which the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).

### B. Analysis

The parties do not dispute that diversity of citizenship exists.[5]  However, the parties disagree as to when Defendants should have ascertained that the amount in controversy exceeded $75,000.  Plaintiff alleges that Defendants' removal is untimely because the amount in controversy was determinable from the initial Complaint and, alternatively, was determinable once Plaintiff was deposed on January 20, 2016.  *See* Mot. at 2:3-3:12, Docket No. 30.  Defendants contend that they were unable to determine that the amount in controversy exceeded $75,000 until they received Plaintiff's supplemental interrogatory responses on March 1, 2016, and thus their removal on March 29, 2016 was timely.  *See* Opp'n at 1:2-9, Docket No. 35.

1. <u>Defendants' Removal was Untimely Under 28 U.S.C. § 1446(b)(1)</u>

As discussed *supra*, where an initial pleading sets forth the basis for removal, a removal notice must be filed within thirty days of service of the pleading.  *See* 28 U.S.C. § 1446(b)(1).  Where "the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $75,000."  *Kroske v. U.S. Bank Corp.*, 432 F.3d 876, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006) (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997)).  "The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract."  *Id.* (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)).

Defendants contend that they could not ascertain from the Complaint that the amount in controversy exceeded the $75,000 jurisdictional threshold.  *See* Opp'n at 5:7-11, Docket No. 35.  Specifically, Defendants argue that "the only dollar amounts stated [in the Complaint] are associated with vague assertions of Defendants' alleged failure to pay wages or paying lower rates of pay, failure to pay overtime, unspecified instances when meal periods and rest breaks

---

[5] As alleged in Defendants' Notice of Removal, Plaintiff is a citizen and resident of Nevada.  *See* Notice of Removal pt. IV, ¶ 3, Docket No. 1.  CLP is a Delaware corporation with its principal place of business in Tacoma, Washington.  *Id.* ¶ 5.  First Solar is a Delaware corporation with its principal place of business in Arizona.  *Id.* ¶ 4.  TrueBlue is Washington corporation with its principal place of business in Tacoma, Washington.  *Id.* ¶ 6.

were not provided, and claims of misconduct allegedly triggering statutory and civil penalties." *Id.* at 5:12-15.  Defendants further assert that there are no dollar amounts disclosed with respect to any of Plaintiff's damages, and calculating Plaintiff's damages based on the facts alleged in the complaint would constitute "impermissible speculation." *Id.* at 5:17-24.

However, as Plaintiff correctly contends, "[a] pleading need not identify a specific amount in controversy in order to trigger the thirty-day removal period under 28 U.S.C. § 1446(b)(1) . . . . [t]he time for removal commences when a defendant is able to 'intelligently' ascertain that a plaintiff's claim exceeds $75,000." *Rodriguez v. Boeing Co.*, No. CV 14-04625-RSWL (AGRx), 2014 WL 3818108, at *4 (C.D. Cal. Aug. 1, 2014) (citations omitted); *see also Mendoza v. Am. Airlines, Inc.*, No. CV 10-7617 RSWL (JCx), 2010 WL 573675 (C.D. Cal. Dec. 22, 2010) ("[W]hile the [c]omplaint does not state the specific amount in controversy here, this does not preclude a finding that the [c]omplaint facially alleges an amount in controversy in excess of the minimum jurisdictional amount.").  The Ninth Circuit has emphasized that while a defendant "need not make extrapolations or engage in guesswork[,] the [removal] statute 'requires a defendant to apply a reasonable amount of intelligence in ascertaining removability'. . . . [m]ultiplying figures clearly stated in a complaint is an aspect of that duty." *Kuxhausen v. BMW Fin. Servs. NA, LLC*, 707 F.3d 1136, 1140-41 (9th Cir. 2013) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 884 (9th Cir. 2010); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001)).

In support of its position, Plaintiff relies on two recent wrongful termination cases from this district, which held that the amount in controversy could have been intelligently ascertained to be above the jurisdictional threshold based on the factual allegations and types of damages described in the initial complaints, and thus determined that removal was untimely.[6]  *See Rodriguez*, 2014 WL 3818108, at *4-6; *Mendoza*, 2010 WL 573675, at *2-3.  In *Rodriguez,* the complaint asserted three claims against the plaintiff's employer based on allegations that the plaintiff was wrongfully terminated.  *See generally* Pl.'s RJN, Docket No. 38-1 at 4.  In connection with these claims, the complaint requested compensatory damages, including back-

---

[6] Plaintiff requests that the Court take judicial notice of the complaint in *Rodriguez,* on the basis that it is a public record not subject to reasonable dispute.  *See* Pl.'s RJN ¶ 1, Docket No. 38-2.  Because the Ninth Circuit has made clear that courts may take judicial notice of court filings and other matters of public record, the Court should grant Plaintiff's request.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 n. 6 (9th Cir. 2006) (taking judicial notice of court pleadings, memoranda, and expert reports from prior litigation); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that a court may take judicial notice of undisputed matters of public record).

pay, front pay, and emotional pain and suffering; punitive damages; attorney's fees and costs; and pre- and post-judgment interest. *Id.* at 9:20-10:2, Docket No. 38-1 at 12-13. Although the complaint did not allege a specific amount of damages or provide an estimate of attorney's fees, the court held that the defendant could have ascertained that the amount in controversy was above $75,000 because the "allegations in [p]laintiff's [c]omplaint, along with the types of damages [p]laintiff is seeking here, made it facially apparent that the amount in controversy exceeds the jurisdictional minimum of $75,000." *Rodriguez*, 2014 WL 3818108, at \*5. The court reasoned that "[i]n light of litigation realities, in a case in which a long-term employee, such as [p]laintiff, seeks lost income, damages for emotional pain and suffering, punitive damages, and attorney's fees, the amount in controversy is likely to exceed $75,000." *Id.*

Similarly, in *Mendoza*, the court held that the complaint sufficiently demonstrated an amount in controversy above the jurisdictional limit because it alleged numerous claims of wrongful termination based on racial discrimination and harassment and sought lost income and benefits, emotional and mental distress, punitive damages, and attorney's fees. *See Mendoza*, 2010 WL 5376375, at 3; *see also Kroske*, 432 F.3d at 980 (holding that removal was proper because amount in controversy was sufficiently established by the plaintiff's interrogatory responses, which identified "the following categories of damages: lost wages, benefits including but not limited to health and mental insurance, 401(k) contributions, value of life insurance policies, stock options, and emotional distress damages, as well as attorney's fees and costs"); *Carter v. Mae*, No. SACV 14-01754-CJC(JCGx), 2014 WL 7339208, at \*2 (C.D. Cal. Dec. 23, 2014) (remanding case on the grounds that the defendant should have been able to determine from the initial complaint that the amount in controversy exceeded $75,000, because the complaint alleged claims for wrongful termination and sought "compensatory and consequential damages to redress injuries suffered as a result of [plaintiff's] termination . . . including back[-]pay for lost wages and benefits, front pay for denial of plaintiff's expected future earnings, pain and suffering, emotional distress, public humiliation, and damage to her professional reputation . . . punitive damages . . . and attorney's fees and costs," and emphasizing that the defendant, as the plaintiff's employer, should have been aware that the plaintiff's $120,000 salary would constitute part of her damages); *Jellinek v. Advance Prods. & Sys., Inc.*, No. 10CV1226 JM(WMC), 2010 WL 3385998, at \*2 (S.D. Cal. Aug. 24, 2010) (finding removal untimely because "it is facially apparent [from the complaint] that the amount in controversy likely

exceeded the $75,000 amount in controversy requirement. . . . [p]laintiff seeks monetary damages for wrongful termination and seeks compensatory and punitive damages (including loss of pay, fringe benefits, impaired earning capacity, and emotional distress) as well as attorney's fees").

Here, the Complaint asserts 16 claims based on allegations that Defendants failed to pay Plaintiff wages and overtime wages, failed to provide proper meal and rest periods, failed to pay indemnification and reimbursement expenses, failed to provide employment records and accurate wage statements, failed to maintain accurate time records, and wrongfully terminated Plaintiff, among other things. *See generally* Compl., Docket No. 1-2.  The Complaint specifically seeks monetary damages for unpaid wages, continuing wages, lost income and benefits, unpaid overtime, unpaid reimbursements and indemnification, and unpaid meal and rest periods; punitive damages; civil and statutory penalties; and attorney's fees and costs. *Id.*  As in *Mendoza* and *Rodriguez*, these allegations and categories of damages should have made it apparent to Defendants that the amount in controversy likely exceeded $75,000.

Moreover, the Complaint asserts specific numbers that should have enabled Defendants to ascertain that the amount in controversy exceeded $75,000.  For example, the Complaint asserts that Plaintiff was entitled to per diem after relocating to Nevada, and estimates that Plaintiff's claim for per diem amounts to around $4,800 per month, beginning at the end of July 2014. *Id.* ¶ 14.  The Complaint further alleges that Plaintiff was informed he would be paid an annual amount between $80,000 to $100,000, although he was actually paid less, and claims that Plaintiff is entitled to 30-days continuing wages under California Labor Code § 203, which at a salary of $80,000 would amount to approximately $6,000. *Id.* ¶¶ 19-20, 65.   In addition, the Complaint specifically claims two $750 penalties under California Labor Code § 1198.5. *See id.* ¶¶ 82, 91.  The Complaint also asserts whistleblower violations against each defendant in the amount of $10,000 each, totaling $30,000. *See id.* ¶¶ 112-115.  The Complaint also requests attorney's fees pursuant to California Labor Code §§ 218.5, 226(e), 226.7, 1194, 2802, and 2699, which, combined with the Complaint's other damages, likely put the amount in controversy above $75,000. *See Sasso v. Noble Utah Long Beach, LLC*, CV 14-09164-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. March 3, 2015) (holding that conservative estimate of attorney's fees in determining amount in controversy in employment cases is $30,000); *Rodriguez*, 2014 WL 3818108, at *6 (emphasizing that even excluding claim for back-pay damages, plaintiff's

claims for punitive damages, attorney's fees, and other monetary damages would likely put the jurisdictional amount over $75,000); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 (N.D. Cal. 2002)) (calculating "conservative" estimate of attorney's fees at $30,000, based on similar employment cases for wrongful termination).

Indeed, as Plaintiff points out, his claim for lost income from his wrongful termination alone made it apparent that the amount in controversy exceeded the jurisdictional threshold of $75,000. *See* Mot. at 10:18-11:10, Docket No. 30. In *Rodriguez,* the court emphasized that "[a]lthough [p]laintiff did not plead his specific salary, as a long-time employer of [p]laintiff and aware of [p]laintiff's position, [d]efendant should have known the approximate amount [p]laintiff made each year," and thus could have multiplied that amount by the number of months since the plaintiff's alleged wrongful termination to determine the amount in controversy was met. *Rodriguez,* 2014 WL 3818108, at * 5. The court explained that although only four months had elapsed since plaintiff's termination at the time the complaint was filed, the correct measurement for calculating the plaintiff's lost income was the number of months from termination to the date of judgment. *Id.* (emphasizing that "[a]n award of back-pay is determined from the time of the unlawful adverse action until the date of judgment"). As such, the court concluded that "[d]efendant should have been aware that it would take longer than four months to reach post-judgment and should have been able to ascertain with a reasonable amount of intelligence that back-pay alone would come close to the jurisdictional amount of $75,000." *Id.*; *see also Kuxhausen,*707 F.3d at 1140 (emphasizing that "[m]ultiplying figures clearly stated in a complaint is an aspect" of a defendant's duty in ascertaining removability).

Here, the Complaint alleges even greater detail than the complaint in *Rodriguez.* The Complaint alleges that Plaintiff's annual salary was supposed to have been $80,000 to $100,000, and states that Plaintiff was terminated on October 21, 2014. [7] *See* Compl. ¶¶ 19-20, Docket No.

---

[7] Defendants argue that the Complaint alleges Plaintiff was paid less than $80,000 to $100,000, but does not specify how much less. *See* Opp'n at 5:7-25, Docket No. 35. The Court does not believe this is relevant to the ultimate question of the amount Plaintiff seeks to recover, as Plaintiff appears to be requesting back-pay for the income he was supposed to make, from the time he was fired in October 2014 to the present. In any event, as Plaintiff's employer, Defendants were aware of Plaintiff's position and the approximate amount Plaintiff made each year. *See Rodriguez,* 2014 WL 3818108, at * 5 (where plaintiff did not specify salary, defendant should have known approximate amount plaintiff made each year and could have multiplied that by the number of months since plaintiff's termination to determine the amount in controversy exceeded $75,000).

Defendants also argue that Plaintiff is not entitled to lost wages because: (1) he could not have obtained employment as a result of the injuries he sustained while working for Defendants, and (2) he is currently receiving workers' compensation. *See* Opp'n at 12:12-25, Docket No. 35. The Court does not believe these arguments are

1-2.   More than one year has elapsed since Plaintiff's termination, making the amount of damages for lost income alone greater than $75,000.  Defendant argues that it could not calculate back-pay because it did know whether Plaintiff mitigated his loss by finding new employment; however, the *Rodriguez* court found the same argument unavailing.  *See* Opp'n at 6:8-10, Docket No. 35; *Rodriguez*, 2014 WL 3818108, at *5.  The court reasoned that because the complaint did not indicate whether the employee was able to find alternative employment, and the burden is on the employer to affirmatively prove that an employee has found comparable employment to the employee's former position, the defendant had no grounds to argue that it could not estimate back-pay damages.

Defendants argue that *Rodriguez* and *Mendoza* are factually distinguishable from the instant case because those decisions did not specify the factual allegations that made it facially apparent from the complaints that each case was removable.  *See* Opp'n at 12:12-26, Docket No. 35.  However, as discussed *supra*, both cases describe the type of allegations and the specific categories of damages sought.   Moreover, Plaintiff has provided the complaint filed in *Rodriguez*, which contains similar factual allegations as the instant Complaint.  *See generally* Pl.'s RJN, Docket No. 38-1 at 4-13.  As such, Defendants' arguments are unavailing.

On the other hand, the cases Defendants cite in support of their position are factually distinguishable from the instant case.  For example, Defendants rely on *Kuxhausen v. BMW Fin. Servs. NA, LLC*, 707 F.3d 1136, 1140-41 (9th Cir. 2013), in support of Defendants' contention that the Complaint did not make it facially apparent that the case was removable.  *See* Opp'n at 6:8-7:3, Docket No. 35.  However, in *Kuxhausen*, a class action involving allegations that an automobile dealership had backdated contracts, the Ninth Circuit held that while the defendant would have been obligated to perform basic multiplication based on the number of class members and the cost of the at-issue contracts to determine whether the five million dollar class

---

relevant to whether the Complaint on its face established that the amount in controversy was greater than $75,000. *See Ruggieri v. Hartford Ins. Co. of the Midwest*, No. 2:13-cv-00071-GMN-GWF, 2013 WL 2896967, at *2 (D. Nev. June 12, 2013) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)) (explaining that "the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement" is not relevant to the question of removability).  In any event, even assuming damages for lost income were reduced, the numerous other monetary damages, punitive damages, civil penalties, and attorney's fees alleged in the Complaint should have made it ascertainable that the jurisdictional threshold was met.  *See Rodriguez*, 2014 WL 3818108, at *6 (noting that "even if [p]laintiff only lost $30,000 in back-pay as [d]efendant alleges in its [o]pposition, [p]laintiff's claims for punitive damages attorney's fees, damages for emotional pain and suffering, and front pay would likely put the jurisdictional amount over $75,000").

11

action jurisdictional requirement was met, the district court had erred in assuming that all of the vehicle contracts cost the same as the plaintiff's contract. *Kuxhausen*, 707 F.3d at 1140-41. The value of the additional 200 class members' vehicle contracts was not alleged or approximated in the complaint, and the Ninth Circuit held that the defendant was not obligated to consult its business records to determine the value of each class member's contract in order to determine whether the jurisdictional requirement was met. *Id.* In contrast to *Kuxhausen*, Defendants here were not required to look through their files to determine whether the jurisdictional requirement was met.

Defendants also rely on *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992), a contract dispute in which the Ninth Circuit held that the amount in controversy could not be ascertained because the complaint "offered no facts whatsoever to support [the amount in controversy] . . . . [the defendant] simply alleges that the 'amount in current controversy . . . exceeds the sum of $50,000." *Gaus*, 980 F.2d at 5676. The Ninth Circuit thus held that the defendant had failed to satisfy its "burden of setting forth, in the removal petition itself, the *underlying facts* supporting its assertion that the amount in controversy" was met. *Id.* (emphasis in original). As discussed *supra*, the instant Complaint alleges numerous facts and damages establishing that the amount in controversy exceeded $75,000, and is therefore distinguishable.

Defendants further cite to *Kirkland v. Morton's of Chicago*, No. C-96-2301 MHP, 1996 WL 532118 (N.D. Cal. Sept. 16, 1996), which held that although it was clear from the complaint's allegations of "prevalent and egregious" sexual harassment and discrimination that damages would be significant, the allegations were not sufficient to trigger the 30-day removal period because the complaint did not state a claim for damages. *See Kirkland*, 1996 WL 532118, at *1-2. Defendants also cite to *Jakuttis v. Allstate Indem. Co.*, No. EDCV 15-0624 JGB (KKx), 2015 WL 3442083 (C.D. Cal. May 27, 2015), which held that a complaint for breach of contract did not establish that the amount in controversy was greater than $75,000 because, although the complaint requested damages resulting from the defendant's alleged breach of its duty of good faith and fair dealing, including attorney's fees and costs from arbitration, emotional distress damages, and punitive damages, it did not provide sufficient facts or amounts related to the claimed damages, other than an allegation that the arbitrator had awarded the plaintiff $100,000 more than the defendant's best settlement offers. *See Jakuttis*, 2015 WL 3442083, at *2.

Unlike the complaints in *Jakuttis* and *Kirkland*, the instant Complaint provides specific

12

allegations regarding Plaintiff's wrongful termination and requests specific categories of monetary damages, as well as civil and statutory penalties, punitive damages, and attorney's fees. The Court therefore believes that the instant Complaint is factually on point with the complaints in *Rodriguez* and *Mendoza*, which involved similar allegations of wrongful termination and similar categories of damages, rather than the cases cited by Defendants.

In sum, the specific amounts alleged in the Complaint, combined with the Complaint's requests for various categories of monetary damages, including reimbursement expenses and unpaid wages for overtime, rest periods, and meal periods; as well as civil and statutory penalties for numerous California Labor Code and ICW violations, punitive damages, and attorney's fees and costs, made it ascertainable from the face of the Complaint that the jurisdictional threshold was met. As such, the Court would GRANT Plaintiff's Motion.

2. Defendants' Removal was Untimely under 28 U.S.C. § 1446(b)(3)

In the alternative, Plaintiff's deposition on January 20, 2016 triggered the 30-day removal period under 28 U.S.C. § 1446(b)(3). Under § 1446(b)(3), if an initial pleading does not make the amount in controversy clear, the thirty-day period for removal is triggered after a defendant receives a copy of an amended pleading, motion, or other paper indicating that the case is removable. *See* 28 U.S.C. § 1446(b)(3). Other paper is interpreted broadly and includes "reply briefs, responses to interrogatories, and deposition questions," as well as discovery requests. *See Rodriguez*, 2014 WL 3818108, at *6 (citing *Cavrvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010)).

At his deposition, Plaintiff testified that he has been unemployed since he was terminated in October 2014; that his hourly rate was between $50 and $56 throughout his employment with Defendants; that he incurred numerous expenses related to his employment with Defendants that he has not been reimbursed for; and that he worked through more than 200 meal breaks during his employment. *See* Harris Decl. Ex. 3 at 20:3-9, 29:4-19, 129:1-7, 231:10-20; Docket No. 30-1 at 120, 129, 229, 328. In addition, the parties introduced exhibits at the deposition that included Plaintiff's wage statements listing his hourly rates, as well as receipts listing at least $9,268 in expenses for which Plaintiff is seeking reimbursement. *See id.* ¶ 5; Ex. 3, Dep. of Tim Jones Exs. 4, 9, Docket No. 30-1 at 399-484. Assuming Plaintiff was paid the lower rate of $50 per hour throughout his employment, Plaintiff's annual salary calculates to over $75,000. In addition, Plaintiff's claim for 200 missed meal breaks at $50 an hour amounts to $10,000.

13

Combined with the Complaint's request for additional monetary damages, attorney's fees, statutory and civil penalties, and punitive damages, Defendants could intelligibly ascertain that the amount in controversy was above $75,000 by January 20, 2016, thereby making their removal on March 29, 2016 untimely. *See Rodriguez*, 2014 WL 3818108 at *7 (holding that exhibit included with interrogatory responses triggered the thirty-day removal period under § 1446(b)(3) because it indicated that the plaintiff's annual compensation was above $75,000, and emphasizing that "[a]ll that [d]efendant had to do was multiply [p]laintiff's lost wages by the number of months since his termination and then factor in punitive damages, attorney's fees, damages for emotional pain and suffering, and front pay"); *Mendoza*, 2010 WL 5376375 at *4 (where interrogatories indicated that the plaintiff's lost income as of that date was $49,980, thirty-day period under § 1446(b)(3) was triggered because that amount combined with alleged emotional damages and lost benefits made it clear that amount in controversy was met).

### 3.  Plaintiff is Not Entitled to Attorney's Fees

Plaintiff requests attorney's fees on the grounds that Defendants' removal was in "bad faith" and "solely a procedural ploy to permit Defendants to avoid: (1) pending state court discovery obligations; (2) responding to a motion for summary adjudication; and (3) trial." *See* Mot. at 19:9-15, Docket No. 30.

Upon remand, a court may award attorney's fees and costs incurred as a result of the removal. *See* 28 U.S.C. § 1447(c).  However, the Supreme Court has made clear that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  There is no presumption in favor of or against the granting of such fees. *See* Wagstaffe, Schwarzer & Tashima *Federal Civil Procedure Before Trial* (The Rutter Group 2016) § 2:3803 at 2D-221.

Federal courts in California have held that where a specific amount in controversy is not alleged in the Complaint or "other paper" that started the thirty-day time period for removal, there is "some ambiguity [] as to the exact amount in controversy at issue . . . . given this lack of clarity it cannot be said that [d]efendants lacked an objectively reasonable basis for seeking removal." *Mendoza*, 2010 WL 5376375, at *4 (citing *Jellinek*, 2010 WL 3385998, at *3).  Here, an exact amount in controversy was not disclosed in either the Complaint or at Plaintiff's deposition; as such, the Court would find that Defendants did not lack an objectively reasonable

14

basis for seeking removal.  Thus, the Court would DENY Plaintiff's request for attorney's fees.

### C. Conclusion

Because Defendants' removal was untimely, the Court would GRANT Plaintiff's Motion to Remand.

## III.  Motion to Strike

Defendants have also moved to strike all allegations related to Plaintiff's newly added claim for violation of California Business & Professions Code § 17200.  *See generally* Mot. to Strike, Docket No. 28.  The Motion relates to Plaintiff's First Amended Complaint, which was filed in state court on March 21, 2016.  *See generally* Docket No. 5-12.  Because the Court would remand this action, Defendants' Motion is MOOT.